Michael David Wilson
Mountain Home Conservation Camp
P.O. Box 647
Springville, CA 93265
CDCR: F-22446

In pro se

THE UNITED STATES DISTRICT COURT

IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DAVID WILSON, ) | 3:11-cv-00599-IEG-BLM |
| Plaintiff, ) | |
| ) | **PETITIONER'S TRAVERSE TO** |
| ) | **RESPONDENT'S ANSWER** |
| vs. ) | |
| FRANK X. CHAVEZ, Warden, ) | |
| Respondent, ) | Hon. Barbara L. Major |

**PETITIONER'S TRAVERSE TO RESPONDENT'S ANSWER**

Pursuant to the order of this Court, Petitioner Michael David Wilson hereby submits this traverse in response to the answer filed by Frank X. Chavez, Warden of Sierra Conservation Center State Prison, California Department of Corrections and Rehabilitation. Petitioner alleges as follows:

**I.**

Petitioner admits that he is in custody as stated in respondent's Answer. Petitioner is not however, "lawfully" being held in custody because of the violations of his rights under the United States Constitution that are alleged in the petition for writ of habeas corpus.

-1-

## II.

Petitioner agrees with Respondent's contention that all issues are timely and have been exhausted in state court, as stated in the Answer.

## III.

Petitioner agrees that 28 U.S.C. § 2254 applies to this case. However, contrary to respondent's contentions, petitioner alleges that he has suffered numerous deprivations of his constitutional rights and, hence, that he is entitled to habeas corpus relief.

## IV.

Except as expressly admitted herein, petitioner denies each and every allegation of the Answer and re-affirms that his confinement is in violation of the United States Constitution.

## V.

### STANDARD OF REVIEW

As a preliminary matter, it should be noted that petitioner agrees that respondent's standard of review contains an accurate summary of the governing law regarding the deference due under the Antiterrorism and Effective Death Penalty Act ("AEDPA") to state court adjudications on the merits. On the other hand, respondent omits entirely from his discussion an important standard to be considered at this juncture of the litigation -- the standard this Court must apply in reviewing unreasonable determinations made by the State courts and the standard for obtaining an evidentiary hearing.

a. **Petitioner is entitled to an Evidentiary Hearing.**

A petitioner on federal habeas corpus is entitled to an evidentiary hearing when he has made a "colorable" claim for relief, and where the petitioner has never been accorded a state or federal hearing on a particular claim. Earp v. Ornonski (9th Cir. 2005) 431 F.3d 1158, 1167, citing Townsend v. Sain (1963) 372 U.S. 293 and Keeney v. Tamayo-Reyes (1992) 504 U.S. 1, 5. In stating a "colorable" claim, a petitioner is merely required to allege specific facts, which, if true, would entitle him to relief. Ibid. Granted, under the AEDPA, a federal court is not required to hold a hearing if the petitioner failed to develop the facts in state court. In such cases, the federal court accords a presumption of correctness to the facts found by the state court, and need

not hold any evidentiary hearing unless those facts are rebutted by clear and convincing evidence. On the other hand, no AEDPA deference is due where the state has made an "unreasonable" determination of the facts. The case of Taylor v. Maddox (9th Cir. 2004) 366 F.3d 992, 1001 is quite illustrative on this point. In Taylor, the Court stated: "Where a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in an 'unreasonable determination' of the facts." Id. at p. 1001.

In sum, an evidentiary hearing is required under the AEDPA -- and the appellate court will remand for a hearing if the district court rules without granting one --"where the petitioner establishes a colorable claim for relief and has never has been accorded a state or federal hearing on this claim." Earp at 1167.

Here, petitioner was entitled to an evidentiary hearing and the state courts denied a hearing at every level of the state court proceedings. As a result, (1) petitioner was unable, at no fault of his own, to fully present readily available evidence illuminating the basis of his claims; and (2) any controverted facts found by the state courts while denying petitioner's requests necessarily resulted from an "unreasonable determination" of the facts, and hence are not entitled to a presumption of correctness. Therefore, this Court is unconstrained by AEDPA and the door is wide-open for an evidentiary hearing and de novo review. Earp, supra, at 1167; Taylor, supra, at 1101 ["Where the state court's legal error infects the factual finding process, the resulting factual determination will be unreasonable and no presumption of correctness can attach to it"]. Petitioner therefore requests that this Court order a hearing to take place with regard to his ineffective assistance of counsel claim.

//

//

/

/

## VI.

**WILSON WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL DURING THE PLEA BARGAINING PROCESS BECAUSE HIS ATTORNEY FAILED TO INVESTIGATE WILSON'S BACKGROUND, CAUSING THE DEFENSE TO REJECT AN ADVANTAGEOUS PLEA OFFER AS A RESULT OF ITS DEFECTIVE UNDERSTANDING OF THE LAW.**

### A. Prefatory Statement

No less so than in any other critical stage of a criminal prosecution, an accused is entitled under the Sixth Amendment to have the assistance of counsel during the plea bargaining process to ensure that the outcome of that process, whether it be the accused's acceptance or rejection of the prosecution's plea offer, is reliable and fundamentally fair. This is because a criminal defendant is entitled to effective assistance of counsel during all critical stages of a criminal prosecution, including plea negotiations. Padilla v. Kentucky (2010) 554 U.S. ___, [130 S.Ct. 1473, 1480-81].

In this case, Wilson did not receive effective representation during the plea bargaining process because his attorney admittedly failed to investigate his criminal background, which caused Wilson to reject an otherwise advantageous six-year plea offer from the prosecution. Not only would he have accepted the prosecution's initial offer had his counsel given him competent advise, but Wilson can also make a *prima facie* showing that the prosecutor making the plea offer would not have backed out of the offer, and the trial court would have accepted the plea bargain had he entered into the plea deal with the prosecution.

Respondent concedes that Wilson's claim has been exhausted (Answer at p. 1:12-14), and that his current claim was denied on the merits in state court (Answer at p.4:18-25). However, respondent argues that Wilson's claim is nevertheless barred under Tollett v. Henderson (1973) 411 U.S. 258, 267. Respondent is mistaken.

In Tollett, the United States Supreme Court stated that a guilty plea represents a break in the chain of events which preceded it in the criminal process. When a defendant has solemnly admitted in open court that he is in fact guilty of the offense for which he is charged, he may not thereafter raise independent claims challenging pre-plea violations in federal habeas proceedings. Tollett at 267. There are several exceptions to this rule, however. One of which is when the

-4-

advice of counsel to plead guilty was deficient. See Tollet at p 258 [explaining that because a guilty plea precludes a claim of constitutional violations prior to the plea, petitioner's sole avenue for relief is demonstrating that advice of counsel was deficient]; see also Lambert v. Blodgett (9th Cir. 2004) 393 F.3d 943, 979 [same].

Thus, contrary to respondent's assertions, petitioner Wilson's claims are cognizable on habeas corpus and Tollet does not bar his claims.

### B. Wilson's Sixth Amendment Right To Effective Assistance Of Counsel Was Violated During The Plea Bargaining Phase Of This Case.

In Strickland, the United States Supreme Court defined the prejudice requirement as a showing by the defendant that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. In this case, the *proceeding* in question is the *plea bargaining process*, and the *result* of that proceeding is a decision by the defendant to either to accept an offer made by the government, or to proceed to trial. See Hill v. Lockhart (1985) 474 U.S. 52, 57 ["Although our decision in Strickland v. Washington dealt with a claim of ineffective assistance of counsel in *a capital sentencing proceeding*, and was premised in part on the similarity between such a proceeding and the usual criminal trial, the same two-part standard seems to us applicable to ineffective assistance claims *arising out of the plea process*."] (emphasis added). See also id. at 59 [holding that the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance *affected the outcome of the plea process*"] (emphasis added).

As the Court recognized in Hill, the Sixth Amendment concern in the context of the plea bargaining process is "with the quality of counsel's performance *in advising a defendant whether to plead guilty*" and this concern "stem[s] from the more general principle that all 'defendants facing felony charges are entitled to effective assistance of competent counsel.' " 474 U.S. at 57 (quoting McMann v. Richardson (1970) 397 U.S. 759, 771 & n.14) (emphasis added). And it is beyond question that a defendant charged in a criminal complaint, and presented with multiple plea offers before and after a preliminary hearing, is constitutionally entitled "to have the Assistance of Counsel for his defence," United States Constitution, amendment VI, because

"[w]hatever else it may mean, the right to counsel granted by the Sixth and Fourteenth Amendments means *at least* that a person is entitled to the help of a lawyer *at or after the time that judicial proceedings have been initiated against him* – 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Brewer v. Williams (1977) 430 U.S. 387, 398 (quoting Kirby v. Illinois (1972) 406 U.S. 682, 689 (emphasis added).

Accordingly, the prejudice inquiry in this case is properly framed as whether there is a reasonable probability that, but for counsel's unprofessional errors, Wilson's decision with respect to the multiple plea offers would have been different. See, e.g., Hoffman v. Arave (9th Cir. 2006) 455 F.3d 926, 941-42 [requiring only that "Hoffman ... show that there is a reasonable probability that he would have accepted the plea agreement had he received accurate advice from his attorney."] Nunes 350 F.3d at 1054 [holding that "Nunes needed only to demonstrate that he had sufficient evidence for a reasonable fact finder to conclude with 'reasonable probability' that he would have accepted the plea offer, a probability 'sufficient to undermine the result'"]. In this case, there is a reasonable probability of a different outcome had effective assistance of counsel been rendered during the plea bargaining stage. Wilson and his attorney repeatedly stated on the record – during two separate hearings – that Wilson was willing to plead guilty in exchange for a favorable plea deal. It is plain from the record that the only reason Wilson did not accept the initial six year plea deal is because of his attorney's indefensible failure to investigate the seriousness of Wilson's priors from Tennessee and determine that those convictions were strikes. On this record, Wilson need not rely upon his declaration that counsel's advice caused the loss of the plea deal because counsel herself affirmatively stated – after the preliminary hearing – that she had not properly investigated Wilson's background and that Wilson declined the plea bargain as a result of his defective understanding of the law. Moreover, contemporaneous evidence confirms Wilson's intent to plead guilty early on and avoid trial.[1]

---

[1] Wilson's initial attempt to enter into an early disposition directly with the Court and, then, his subsequent plea of guilty demonstrates that he was amenable to a plea deal in this case. Unfortunately, Wilson received simple and breathtakingly wrong advice which caused him to repeatedly turn down the prosecution's initial six-year deal which was on the table in open court.

1  The stark difference between the minimum sentence that Wilson was offered in the
2  prosecution's original plea deal – a sentence of six years – and the sentence he ultimately
3  received following poor advocacy from counsel – nine years – is clear and convincing evidence
4  that Wilson would have accepted the initial offer had he been properly represented in the
5  bargaining phase of this case. Based upon the fact that Wilson ultimately pled guilty, it is more
6  than "reasonably probable" that Wilson would have accepted the six year offer if he had been
7  made aware that he had previous strikes and that the minimum sentence he faced if the
8  prosecution amended it charges was a lifetime longer than the minimum sentence that was
9  offered by the prosecution. See, e.g., Day 969 F.2d at 45 "[W]e do not find it at all implausible
10 that a young man would think twice before risking over 3800 extra days in jail just to gain the
11 chance of acquittal of a crime he knew that he had committed."] Instead, Wilson believed
12 counsel's assurances that his sentencing exposure was low and that he could possibly get a
13 different, and better, deal down the road. Counsel also told Wilson that the prosecution's six-year
14 deal would remain open for several weeks. Had Wilson known that he risked more than he stood
15 to gain, and had he known that his prior Tennessee convictions qualified as strikes in California,
16 he would have immediately accepted the prosecution's original offers. Unfortunately, though,
17 the only reasonable inference was that proceeding with the case carried no risk, which was
18 obviously wrong.

19  The prosecutor in this case offered Wilson a plea which was proper, and pursuant to
20 which he would have been convicted and sentenced if not for counsel's affirmative misadvice.
21 There is no dispute that the initial offer was open and that its rejection was the result of counsel's
22 gross misapprehension of the law. The record amply reflects that stark fact. Because of that
23 misadvice, Wilson is now serving a much higher sentence than that offered on numerous
24 occasions. The record itself affirmatively shows prejudice, and this prejudice was not cured by
25 the subsequent plea.

26 \\
27 \\
28 \

### C. The Appropriate Remedy Is To Allow Wilson To Accept The Six-Year Plea Offer That He Would Have Accepted But For The Sixth Amendment Violation.

A conditional writ requiring reinstatement of the plea offer comports with the broad discretion traditionally exercised by habeas courts in correcting constitutional errors and would correct the constitutional deprivation in this case. The collective consensus of the courts of this nation is that the type of relief that should be afforded in Mr. Wilson's case is a conditional writ requiring the state to reinstate the original four year, eight month offer. See, e.g., Satterlee v. Wolfenbarger (6th Cir. 2006) 453 F.3d 362 [affirming grant of conditional writ requiring reinstatement of plea offer and subsequent grant of unconditional writ ordering defendant's release]; Hoffman v. Arave (9th Cir. 2006) 455 F.3d 926 [ordering "the district court to direct the State to release [the defendant] unless, ... the State offers [the defendant] a plea agreement with the 'same material terms' offered in the original plea agreement."]; Nunes, 350 F.3d at 1057; Turner, 858 F.2d at 1204 [ordering a "new plea hearing during which a rebuttable presumption of vindictiveness would attach to any plea offer made by the State in excess of its original ... offer"]; United States v. Blaylock (9th Cir. 1994) 20 F.3d 1458, 1469 [remanding for consideration of ineffective assistance claim and instructing that defendant "should have the choice between going forward with a new trial or accepting the government's original plea offer."]; Day, 969 F.2d 39 [approving of the remedy of ordering the state to reinstate the offer]; see also Turner v. Texas (2001) 49 S.W.3d 461, 471 [remanding the case with the "order to withdraw the appellant's plea, require the State to reinstate the plea offer as it existed prior to the Sixth Amendment violation, and allow appellant to replead to the indictment"]. A conditional writ allowing Wilson to accept the six-year offer he would have accepted but for the Sixth Amendment deprivation is appropriate in this case.

As this Court is aware, remedies for deprivations of the right to effective counsel "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on compelling interests." United States v. Morrison (1981) 499 U.S. 361, 364. A conditional writ ordering reinstatement of the plea offer in this case is not only within the scope of permissible remedies and a common form of relief afforded by federal and state courts in

cases involving a forgone plea offer, but also best restores Wilson and the State to the circumstances prior to the deprivation. Prior to the Sixth Amendment violation that occurred, the offer in this case was six years. That offer was made available to Wilson on numerous occasions and was left open for the taking during the span of several days. Had Counsel investigated the seriousness of Wilson's criminal history – as defense attorneys are required to do under Sixth Amendment precedent – prior to misinforming Wilson about the potential sentencing exposure in this case, there is a reasonable likelihood that Wilson would have accepted the prosecutions' initial offer.

## Conclusion

Based upon the foregoing facts and law, and based upon the State Courts' unreasonable application of the law to the facts of the case, Wilson hereby requests that this Court grant habeas relief pursuant to 28 U.S.C. § 2254(d)(1) & (2).

Dated:

Your petitioner,

*/s/ Michael Wilson*
Michael David Wilson

# PROOF OF SERVICE BY MAIL
## [C.C.P. § 1013 (a) § 2015.5]

I, __Michael Wilson__ hereby declare:

1. I am a citizen owing loyalty to and entitled to the protections of the United States of America. I am over the age of eighteen (18) and [not] a party to this action. I am a resident of the County of Tuolumne, CDCR # __F22446__. My address is

   **MICHAEL DAVID WILSON F-22446 R**
   **MOUNTAIN HOME CONSERVATION CAMP**
   **PO BOX 647**
   **SPRINVILLE, CA. 93265**
   **PRO SE**

2. On __9-22-11__, I served via United States Mail a copy of the following document(s):

3. The above-noted legal document(s) were placed in an envelope and given to correctional staff with directions to mail it to the following address(es):[1]

   **UNITED STATES DISTRICT COURT**
   **SOUTHERN DISTRICT OF CALIFORNIA**
   ---
   **OFFICE OF THE CLERK**
   **880 FRONT STREET, SUITE 4290**
   **SAN DIEGO, CALIFORINIA 92101-8900**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

This document was executed on the __22__ day of __September__, for the year __2011__ at Springville California.

Name __Michael Wilson__   Signature __Mike Wilson__

---

[1] Please take notice that pursuant to *Houston v. Lack* (1988) 487 U.S. 266 [108 S.Ct. 2379; 101 L.Ed.2d 245] and *Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106 [92 Cal.Rptr.3d 595] the above legal documents are to be deemed filed on the date they were handed to correctional staff for mailing to the courts. ("Prison Mailbox Rule.")