1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

MICHAEL DAVID WILSON,

                         Petitioner,

      vs.

FRANK X. CHAVEZ, Warden, et al.,

                     Respondents.

Civil No.    11cv0599-IEG (BLM)

**AMENDED REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS**

      This Amended Report and Recommendation is submitted to Chief United States District Judge Irma E. Gonzalez pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.

## I.

## FEDERAL PROCEEDINGS

      Michael David Wilson (hereinafter "Petitioner"), is a state prisoner proceeding pro se and in forma pauperis with a Petition for a Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Petitioner was convicted, pursuant to a guilty plea negotiated by counsel appointed to replace his original counsel, of vehicle theft and evading a police officer with reckless driving, and was sentenced to nine years and four months in state prison. (Pet. at 1-2.) The sole claim presented in the Petition alleges a violation of Petitioner's

Sixth Amendment right to the effective assistance of counsel.  (Id. at 6.)  Petitioner alleges he was offered a six-year plea deal at his first court appearance and informed his original counsel he wished to immediately accept the offer, but counsel failed to communicate Petitioner's acceptance to the prosecutor, which caused the offer to expire and resulted in Petitioner serving an additional three years and four months in prison.  (Id.)

Respondent has filed an Answer to the Petition along with an incorporated Memorandum of Points and Authorities in support thereof, and has lodged portions of the state court record. (Doc. Nos. 8-9.)  Respondent contends that federal habeas relief is unavailable because the entry of Petitioner's later negotiated guilty plea precludes any attack on matters occurring before the entry of that plea, including any events surrounding the earlier six-year plea offer.  (Answer at 5.)  Petitioner was granted leave to file a Traverse on or before July 22, 2011, but failed to do so by that date.

On August 24, 2011, a Report and Recommendation ("R&R") was issued by the undersigned Magistrate Judge finding that habeas relief was not available because: (1) the state court's adjudication of Petitioner's claim did not involve an unreasonable application of clearly established federal law which precludes an attack on a conviction entered as a result of a guilty plea unless (aside from exceptions which do not apply here) the plea was not voluntary and intelligent; (2) even if Petitioner could make such a showing he had waived any constitutional claim arising from the original plea deal by entering into the negotiated plea; and (3) Petitioner had already received any relief to which he might be entitled because counsel had been appointed in state court to assist him in enforcing the original six-year offer.  (Doc. No. 10.)

On September 26, 2011, Petitioner filed a Motion for an extension of time to file a Traverse.  (Doc. No. 12.)  Judge Gonzalez granted Petitioner's Motion, allowed the Traverse to be filed, and remanded for issuance of an Amended R&R which considers the Traverse.  (Doc. No. 13.)  Petitioner's Traverse asserts, for the first time, a request for an evidentiary hearing. (Doc. No. 14.)  In addition, in a transparent effort to circumvent the clearly established federal law identified in the original R&R limiting any attack on his conviction to the voluntary and intelligent nature of his plea, the Traverse presents new allegations so diametrically opposed to

those in the original Petition as to amount to a new claim, namely, that Petitioner repeatedly turned down the initial six-year deal based on counsel's erroneous advice.  (Doc. No. 14.)

For the following reasons, the Court finds that: (1) Petitioner has attempted to raise a new claim in his Traverse which is untimely, unexhausted or procedurally defaulted, and the Court should exercise its discretion to decline to address the new claim; (2) an evidentiary hearing is not warranted; and (3) Petitioner is not entitled to habeas relief with respect to the sole claim raised in the Petition.  Accordingly, the Court **RECOMMENDS** that Petitioner's request to present a new claim be **DENIED**, his request for an evidentiary hearing be **DENIED**, and the Petition be **DENIED**.

## II.

## STATE PROCEEDINGS

In a seven-count third amended information filed in the San Diego County Superior Court on April 24, 2008, Petitioner was charged with the unlawful taking and driving of a vehicle in violation of California Vehicle Code section 10851(a) (count one); buying, receiving, concealing, selling and withholding a stolen vehicle in violation of California Penal Code section 496(d) (count two); receiving stolen property in violation of California Penal Code section 496(a) (count three); evading an officer with reckless driving in violation of California Vehicle Code section 2800.2(a) (count four); driving in the opposite lane while evading a pursuing officer in violation of California Vehicle Code section 2800.4 (count five); resisting an officer in violation of California Penal Code section 148(a)(1) (count six); and giving false information to a peace officer in violation of California Penal Code section 148.9(a) (count seven). (Lodgment No. 1 at 1-3.)  The amended information also alleged that Petitioner had nine prior felony convictions, four of which were serious or violent "strike" priors within the meaning of California's Three Strikes law.  (Id. at 4-5.)

On May 13, 2008, Petitioner, represented by a public defender, entered an unconditional guilty plea as to all seven counts, and admitted two of the prior conviction allegations, including one "strike."  (Id. at 15, 18.)  A court trial on two additional prior conviction allegations was held on June 10, 2008, and the trial judge found them to be true.  (Id. at 21-23.)

On July 30, 2008, prior to sentencing, Petitioner brought a motion to substitute counsel. (Id. at 24.) New counsel was appointed for the purpose of bringing a motion to withdraw the guilty plea. (Id.) A motion to withdraw the plea was filed on October 1, 2008, which included a motion to enforce a six-year plea deal allegedly offered on the first court date. (Lodgment No. 4.) On March 12, 2009, before the motion was set to be heard, and after it had been continued several times, the parties reached a negotiated settlement in which Petitioner was allowed to withdraw his guilty plea to counts one and four, and withdraw his admission to one of the prior strike allegations. (Id. at 30-34.) He then withdrew his motion to enforce the six-year plea deal, and was immediately sentenced to nine years and eight months in state prison. (Id. at 34-35.) Because Petitioner did not file an appeal, his conviction became final for purposes of the one-year statute of limitations applicable to federal habeas petitions on May 11, 2009. See Roberts v. Marshall, 627 F.3d 768, 771 (9th Cir. 2010), cert. denied, 2011 WL 4535775 (Oct. 3, 2011).

On August 10, 2010, about three months after the one-year federal statute of limitations had expired, Petitioner filed a habeas petition in the superior court raising, *inter alia*, the claim presented in his federal Petition here. (Lodgment No. 2.) Although the Petition appears to be untimely, Respondent has waived the affirmative defense of statute of limitations by failing to raise it in the Answer. Morrison v. Mahoney, 399 F.3d 1042, 1046 (9th Cir. 2005); see Answer at 1 (stating that the Petition "appears to be timely").[1]

---

[1] The Court has discretion to raise the statute of limitations issue sua sponte. Day v. McDonough, 547 U.S. 198, 202, 205 (2006). Although Petitioner's first state habeas petition bears a filing stamp date of August 10, 2010, several months after the limitations period expired, it is dated May 6, 2010, several days before the limitations period was set to expire. (Lodgment No. 2 at 8.) Assuming Petitioner could establish that he handed his petition to the prison authorities for mailing to the court (thereby constructively filing it) on May 6, 2010, several months before it was file stamped, it appears he would be entitled to statutory tolling of the limitations period for the full round of his state habeas proceedings. Anthony v. Cambra, 236 F.3d 568, 575 (9th Cir. 2000); Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999). Those proceedings ended on February 16, 2011, when the state supreme court denied his petition for review. (Lodgment No. 10.) At that time Petitioner appears to have had, at most, about five days left on the limitations period. He signed and mailed the instant federal Petition to this Court (thereby constructively filing it) on May 15, 2011, about a month later. (Doc. No. 1.) Thus, the Petition appears to be untimely. The Court recommends declining to exercise its discretion to address the statute of limitations issue sua sponte, however, because Petitioner has had no occasion to allege and develop facts regarding possible tolling of the limitations period due to Respondent's waiver of the defense. In addition, Respondent's waiver of a relatively straightforward affirmative defense provides for the possibility that Respondent may be aware of facts supporting tolling which have not been provided to the Court, although the perfunctory one-page analysis in the Answer addressing the merits of a Petition which presents, as set forth in this Report, a relatively complex claim involving issues

Petitioner alleged in his state trial court habeas petition that his original trial counsel informed him at their first meeting that the Deputy District Attorney had offered a deal for six years, and "knowing it could get worse, I informed her that yes I would take the offer, wave probation report and get sentenced that day and be done with it."  (Lodgment No. 2 at 3.) Petitioner alleged that although his counsel told him she would inform the prosecutor of his acceptance, she failed to do so, and when Petitioner saw her again at the next court date, the offer had expired.  (Id. at 3-4.)  Petitioner stated that he ended up "pleading to the sheet on her advice," thereby exposing himself to five twenty-five years to life sentences, and admitted a prior conviction for which he had not been convicted.  (Id. at 4-5.)

The trial court denied the habeas petition on the basis that Petitioner could have filed a direct appeal raising his ineffective assistance claim, and stated that "[c]ontentions which could have been raised on a timely appeal ordinarily cannot be reviewed in a petition for habeas corpus because habeas corpus ordinarily cannot serve as a second appeal.  In re Dixon (1953) 41 Cal.2d 756, 759; In re Waltreus (1965) 62 Cal.2d 218."  (Lodgment No. 2, In re Wilson, No. HCH 1131, Order at 2 (Cal.Sup.Ct. Oct. 6, 2010).  The trial court found no applicable exception to that rule, and held in the alternative that Petitioner had not made a prima facie showing of specific facts which would entitle him to habeas relief.  (Id. at 3.)

Petitioner filed a habeas petition in the state appellate court on October 26, 2010, raising the same ineffective assistance claim. (Lodgment No. 5.) The appellate court denied the petition without prejudice to refiling in the superior court because it was not supported by the necessary documents. (Lodgment No. 6.) Petitioner filed a corrected habeas petition in the appellate court on November 16, 2010. (Lodgment No. 7.) The appellate court denied that petition on the basis that Petitioner had failed to show he had an enforceable six-year plea agreement, and had in any case withdrawn his motion to enforce that agreement, and had therefore failed to show that but for any error by his first counsel he would have achieved a better result. (Lodgment No. 8, In re Wilson, No. D058562, Order at 1 (Cal.App.Ct. Dec. 21, 2010).)

---

presently pending before the Supreme Court in two cases not cited in the Answer, rather suggests omission by Respondent.

Petitioner filed a petition for review of the appellate court's order in the California Supreme Court on January 3, 2011. (Lodgment No. 9.) That court denied the petition on February 16, 2011, in an order which stated in full: "The petition for review is denied." (Lodgment No. 10.)

**IV.**

**PETITIONER'S CLAIM**

The sole claim presented in the Petition alleges that Petitioner's Sixth Amendment right to the effective assistance of counsel was violated because his original public defender failed to communicate his immediate acceptance of a six-year plea offer, thereby allowing it to expire and resulting in his serving an additional three years and four months in prison. (Pet. at 6.) Petitioner contends in his Traverse, in diametric opposition to the allegations presented in the federal Petition here and to the state courts, that he repeatedly rejected the six-year offer based on his counsel's advice, which was based on counsel's failure to investigate Petitioner's criminal background. (Traverse at 4-7.)

**V.**

**DISCUSSION**

For the following reasons, the Court finds that considering Petitioner's new allegations as having been properly raised in this Court would either render the existing claim untimely, unexhausted or procedurally defaulted, or would present a new claim which is untimely, unexhausted or procedurally defaulted, either way resulting in immediate dismissal of this action and forfeiture of the properly exhausted claim presented in the Petition. The Court therefore recommends exercising its discretion to decline to address the new allegations raised in the Traverse. The Court also finds that an evidentiary hearing is not warranted and that Petitioner not entitled to federal habeas relief as to the sole claim presented in the Petition.

**A.**     **Standard of Review**

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas

1    corpus in behalf of a person in custody pursuant to the judgment of
     a State court only on the ground that he is in custody in <u>violation of</u>
2    <u>the Constitution or laws or treaties of the United States.</u>

3    28 U.S.C.A. § 2254(a) (West 2006) (emphasis added).

4        The Petition was filed after enactment of the Anti-terrorism and Effective Death Penalty

5    Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214.  Under 28 U.S.C. § 2254(d), as

6    amended by AEDPA:

7            (d) An application for a writ of habeas corpus on behalf of a
         person in custody pursuant to the judgment of a State court shall not
8        be granted with respect to any claim that was adjudicated on the
         merits in State court proceedings unless the adjudication of the
9        claim—
             (1) resulted in a decision that was contrary to, or involved an
10       unreasonable application of, clearly established Federal law, as
         determined by the Supreme Court of the United States; or
11           (2) resulted in a decision that was based on an unreasonable
         determination of the facts in light of the evidence presented in the
12       State court proceeding.

13   28 U.S.C.A. § 2254(d) (West 2006).

14       A state court's decision may be "contrary to" clearly established Supreme Court

15   precedent (1) "if the state court applies a rule that contradicts the governing law set forth in [the

16   Court's] cases[]" or (2) "if the state court confronts a set of facts that are materially

17   indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from

18   [the Court's] precedent."  <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000).  A state court

19   decision may involve an "unreasonable application" of clearly established federal law, "if the

20   state court identifies the correct governing legal rule from this Court's cases but unreasonably

21   applies it to the facts of the particular state prisoner's case."  <u>Id.</u> at 407.  A decision may also

22   involve an unreasonable application "if the state court either unreasonably extends a legal

23   principle from [Supreme Court] precedent to a new context where it should not apply or

24   unreasonably refuses to extend that principle to a new context where it should apply."  <u>Id.</u>

25       "[A] federal habeas court may not issue the writ simply because the court concludes in

26   its independent judgment that the relevant state-court decision applied clearly established federal

27   law erroneously or incorrectly. . . . Rather, that application must be objectively unreasonable."

28   <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citations omitted).

Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions . . . ."  Williams, 529 U.S. at 412.  In order to satisfy § 2254(d)(2), a federal habeas petitioner must demonstrate that the factual findings upon which the state court's adjudication of his claims rest are objectively unreasonable.  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

The Supreme Court has indicated that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 562 U.S. ___, 131 S.Ct. 770, 786 (2011), quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington, 131 S.Ct. at 786-87.  The Supreme Court acknowledged that "[i]f this standard is difficult to meet, that is because it was meant to be . . . [and] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court decision conflicts with this Court's precedents."  Id. at 786.

**B.      Petitioner is Not Entitled to Habeas Relief.**

Petitioner contends that he was deprived of the effective assistance of counsel in violation of the Sixth Amendment because his trial counsel failed to communicate his acceptance of the original plea offer of six years.  (Pet. at 6.)  Specifically, he alleges that when he met his public defender for the first time, she told him the Deputy District Attorney had offered a plea deal of six years.  (Id.)  Petitioner told his counsel at that time that he wished to accept the offer, plead guilty, and be sentenced that same day.  (Id.)  Petitioner alleges that counsel told him that she was late for a lunch appointment but not to worry because the prosecutor had told her that the offer would still be open at the next court date.  (Id.)  Counsel also told him that she had spoken to the prosecutor about keeping the offer open in order to give Petitioner time to decide, even though Petitioner had already decided to accept the offer.  (Id.)  At the next court date the deal was no longer available, as it had expired, and Petitioner was advised by his counsel to enter an

1    unconditional guilty plea which exposed him to five sentences of twenty-five years to life and

2    to ask the court for mercy, which he did.  (Id.)  Petitioner states that his counsel and the

3    prosecutor "blame each other" for the mistaken belief that the plea offer remained open.  (Id.)

4    The prosecutor provided a declaration in the state court stating that she had no independent

5    recollection of the case, but that it is her habit and custom to make a note in the file if she agrees

6    to leave a plea offer open, and no such note was in the file.  (Lodgment No. 9 at 3.)  As detailed

7    above, Petitioner was appointed new counsel who then filed a motion to enforce the original plea

8    offer and withdraw the original plea, but that motion was withdrawn when the parties reached

9    a negotiated settlement in which Petitioner withdrew his guilty plea, entered a new guilty plea,

10   and was sentenced to nine years and eight months in state prison.  (Lodgment No. 4 at 30-35.)

11       Respondent argues that under Tollett v. Henderson, 411 U.S. 258 (1973), a guilty plea

12   precludes an attack relating to the deprivation of constitutional rights preceding the entry of the

13   plea, and that any such attack is limited to the voluntary and intelligent nature of the plea.  (Ans.

14   at 5.)  Respondent acknowledges that several exceptions to that rule have been recognized,

15   including challenges based on double jeopardy, vindictive prosecution, and suppression of

16   evidence, but that no recognized exception applies here.  (Id.)

17       In this Court's original R&R, the Court essentially found, as it does once again in this

18   Amended R&R, that because Petitioner is not challenging the voluntary and intelligent nature

19   of his negotiated guilty plea, and no exception to Tollett applies, he cannot challenge his

20   conviction or sentence.  (R&R at 10-18.)  The Court also found that, irrespective of whether

21   Tollett applies, Petitioner is not entitled to habeas relief.  (Id. at 14-17.)

22       In an abrupt departure from the allegations in the Petition (where Petitioner alleged he

23   immediately accepted the six-year plea deal but it expired due to his counsel's failure to timely

24   communicate that acceptance to the prosecutor), and apparently in response to the original R&R,

25   Petitioner now alleges in his Traverse that he repeatedly rejected the six-year plea offer on

26   advice of counsel, and that counsel's advice was deficient because it was based on a failure to

27   investigate Petitioner's criminal background.  (Traverse at 6.)  Petitioner states that he "received

28   simple and breathtakingly wrong advice which caused him to repeatedly turn down the

prosecution's initial six-year deal which was on the table in open court." (Id. at n.1.) Petitioner contends that if counsel had been aware that his prior Tennessee felony convictions would count as strikes against him, it would have been obvious to counsel that a six-year sentence was a good deal, and counsel would not have advised Petitioner to reject the initial offer.  (Id. at 6-7.) Petitioner argues that an exception to Tollett exists where (as noted in the original R&R) the advice of counsel to plead guilty was deficient.  (Id. at 4-5.)

**1. The Court should not address Petitioner's new claim**

Petitioner was specifically instructed in this Court's order to respond that any Traverse filed in this matter "shall be limited to facts or arguments responsive to matters raised in the answer" and "shall not raise new grounds for relief that were not asserted in the Petition." (Order filed 4/22/11 [Doc. No. 7] at 2-3.) The Court therefore has discretion to address or refuse to address any new claims raised in the Traverse.  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (stating that court may ignore issue raised for first time in traverse when scope of traverse has been specifically limited by court order).  For the following reasons, the Court recommends exercising its discretion to decline to address the new allegations presented in the Traverse and to decline to treat the Traverse as raising a new claim.

There is no indication that Petitioner has exhausted his state court remedies with respect to the new allegations by presenting them to the state courts.  See Cartwright v. Cupp, 650 F.2d 1103, 1104 (9th Cir. 1981) (holding that the burden of proving a claim has been exhausted lies with petitioner); Picard v. Connor, 404 U.S. 270, 276 (1971) ("Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies.  Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.") Rather, Petitioner alleged in the state trial, appellate, and supreme courts, as he did in his original Petition in this Court, that he informed his counsel immediately upon hearing the six-year offer that "yes, I would take the offer," and counsel "told me she would inform the D.A. that I would except [sic] the offer."  (Lodgment No. 2 at 3; Lodgment No. 5 at 3; Lodgment No. 7 at 3.) Petitioner now alleges he repeatedly rejected the offer on advice of counsel.  (Traverse at 4-7.)

1    Although Petitioner has exhausted his state court remedies with respect to his original

2    claim, these new allegations would render that claim unexhausted because they have not been

3    presented to the state courts and would change the nature of the claim.  See Aiken v. Spalding,

4    841 F.2d 881, 884 n.3 (9th Cir. 1988) (holding that new evidence presented by a federal habeas

5    petitioner which was not presented to the state courts renders a claim unexhausted where it

6    "places his claim in a significantly different and stronger evidentiary posture than it had when

7    presented in state court"), citing Vasquez v. Hillery, 474 U.S. 254, 259 (1986) (holding that new

8    factual allegations presented to a federal habeas court in support of a claim already presented to

9    the state courts will render the claim unexhausted if the new allegations "fundamentally alter the

10   legal claim already considered by the state courts").  If the sole claim presented in the Petition

11   becomes unexhausted by the new allegations, the Petition would contain a single, unexhausted

12   claim, and would be subject to immediate dismissal.  See Raspberry v. Garcia, 448 F.3d 1150,

13   1154 (9th Cir. 2006) (stating that "[o]nce a district court determines that a habeas petition

14   contains only unexhausted claims, it need not inquire further as to the petitioner's intentions.

15   Instead, it may simply dismiss the habeas petition for failure to exhaust").

16   On the other hand, if the new allegations do not fundamentally alter the original claim,

17   then the Petition would contain two claims, one exhausted and one unexhausted, and it would

18   become a mixed petition which must be dismissed unless Petitioner chooses to abandon the

19   unexhausted claim.  See Rose v. Lundy, 455 U.S. 509, 514, 520-21 (1982) (holding that "a

20   district court must dismiss 'mixed' petitions, leaving the petitioner with the choice of returning

21   to state court to exhaust his claims or of amended or resubmitting the habeas petition to present

22   only exhausted claims to the district court.").  Although Petitioner could request the Court to

23   hold such a mixed Petition in abeyance and stay this action while he returns to state court to

24   exhaust, the Court would be obliged to deny any such request.  The Supreme Court has

25   cautioned that stay and abeyance procedure "should be available only in limited circumstances"

26   where it will not undermine the twin purposes of AEDPA of streamlining federal habeas

27   proceedings and encouraging finality of state court judgments.  Rhines v. Weber, 544 U.S. 269,

28   277 (2005).  Were the Court to stay this action while Petitioner sought state habeas relief based

1   on allegations that are diametrically opposed to those already presented to the state court, and

2   which are raised in this Court in a transparent attempt to circumvent clearly established federal

3   law preventing <u>federal</u> habeas relief with respect to his original allegations, AEDPA's twin

4   purposes would not only be frustrated, they would be blatantly circumvented.

5           The Court need not reach that issue, however, because Petitioner has likely satisfied the

6   technical requirement of exhaustion since it appears he no longer has state court remedies

7   available.  Two and one-half years have passed since Petitioner's conviction became final and

8   he has yet to present the new allegations to a state court which has already imposed a procedural

9   bar as to his other allegations of ineffective assistance of counsel.  <u>See</u> <u>Cassett v. Stewart</u>, 406

10  F.3d 614, 621 n.5 (9th Cir. 2005) ("A habeas petitioner who has defaulted his federal claims in

11  state court meets the *technical* requirements for exhaustion; there are no state remedies any

12  longer 'available' to him."), quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 732 (1991); <u>see also</u>

13  28 U.S.C.A. § 2254(c) (West 2006) ("An applicant shall not be deemed to have exhausted the

14  remedies available in the courts of the State, within the meaning of this section, if he has the

15  right under the law of the State to raise, by any available procedure, the question presented.");

16  <u>see also</u> <u>Walker v. Martin</u>, 562 U.S. ___, 131 S.Ct. 1120, 1125-31 (2011) (holding that

17  California's timeliness requirement providing that a prisoner must seek habeas relief without

18  "substantial delay" as "measured from the time the petitioner or counsel knew, or should

19  reasonably have known, of the information offered in support of the claim and the legal basis

20  for the claim," is clearly established and consistently applied).  Under that scenario the claim is

21  procedurally defaulted in this Court.  <u>See</u> <u>Coleman</u>, 501 U.S. at 735 n.1 (holding that a

22  procedural default arises when a petitioner has "failed to exhaust state remedies and the court

23  to which the petitioner would be required to present his claims in order to meet the exhaustion

24  requirement would now find the claims procedurally barred").  Thus, even if Petitioner has

25  satisfied the technical requirements for exhaustion, any new claim based on the new allegations

26  would be procedurally defaulted in this Court.

27          Finally, even if Petitioner could overcome a procedural default arising from his technical

28  exhaustion, any new claim based on allegations which Petitioner knew of at the time he entered

1    his plea would clearly be barred by the one-year statute of limitations.  As set forth above, the

2    statute of limitations expired on May 11, 2009, or, if Petitioner is to be given the benefit of

3    statutory tolling, on or about February 21, 2011.  Petitioner did not attempt to raise the new

4    allegations in this Court until he constructively filed his Traverse on September 22, 2011, at least

5    seven months after the limitations period expired.  Even if the original Petition is timely, which

6    is unlikely, see footnote 1, infra, the new allegations do not relate back to the original Petition

7    because they do not share a "common core of operative facts" with the previously exhausted

8    claim.  Mayle v. Felix, 545 U.S. 644. 664 (2005).  Rather, the operative facts of the new claim

9    presented in the Traverse, which is not submitted under penalty of perjury, (see Traverse at 9),

10   are diametrically opposed to the operative facts of the claim presented in the Petition, which has

11   been submitted under penalty of perjury (see Pet. at 11).  The two versions of the events cannot

12   both be true.  Either Petitioner immediately accepted the six-year deal, was told by counsel that

13   she would inform the prosecutor of his acceptance, and counsel's inaction caused him to lose

14   its benefit, or he repeatedly rejected the six-year deal on the advice of his counsel, which was

15   based on the lack of investigation into Petitioner's criminal history, and it was that which caused

16   him to lose the benefit of the six-year plea offer.  It is not enough that the legal basis of the

17   claims (ineffective assistance of counsel based on deficient performance) are the same, the

18   factual allegations must also be the same.  See Scott v. Schriro, 567 F.3d 573, 582 (9th Cir.

19   2009) (recognizing that in order to fully and fairly present a claim to the state court, a petitioner

20   is required to provide "the factual and legal basis for the claim").[2]

21        Because recognizing the allegations raised in the Traverse as presenting a new claim

22   would create an unexhausted (or procedurally defaulted) claim barred by the statute of

23   limitations, and therefore result in immediate dismissal of the Petition and forfeiture of the

24   _____

25        [2]  To the extent Petitioner's Traverse could be liberally construed as a Motion to Amend the
     Petition to include the new claim, the Court recommends denying the Motion as unwarranted and futile
26   since the new claim is clearly barred by the statute of limitations, because Petitioner has shown bad faith
     in presenting allegations diametrically opposed to the allegations presented to the state courts and in his
27   federal Petition, and because the undue delay in presenting the new allegations would prejudice
     Respondent in the ability to defend against the new claim.  See Bonin v. Calderon, 59 F.3d 815, 845 (9th
28   Cir. 1995) (holding that in determining whether to permit amendment of a petition a district court should
     consider factors such as "bad faith, undue delay, prejudice to the opposing party, futility of the
     amendment, and whether the party has previously amended his pleadings.")

1   properly exhausted claim contained therein, the Court recommends exercising its discretion to

2   decline to recognize the new allegations raised in the Traverse as stating a new claim or as

3   amending the Petition.  The Court will address the merits of the claim raised in the Petition.

4        **2.  State Court Adjudication**

5        Petitioner presented the claim raised in the Petition to the state supreme court in a petition

6   for review.  (Lodgment No. 9.)  That court denied it without citation or a statement of reasoning.

7   (Lodgment No. 10.)  Because the California Supreme Court did not articulate its rationale for

8   denying the claim, this Court applies the following rebuttable presumption: "Where there has

9   been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding

10  that judgment or rejecting the same claim rest upon the same ground."  Ylst v. Nunnemaker, 501

11  U.S. 797, 803-06 (1991).

12       The last reasoned opinion of the state court was provided by the appellate court in the

13  order denying the habeas petition in which it was raised.  The appellate court stated:

14       The court's minute order dated March 12, 2009, reflects Wilson voluntarily
         withdrew the motion to enforce the March 2008 plea offer because he and the
15       district attorney reached a negotiated settlement and agreed to set aside the May
         13, 2008, plea.  Wilson has not shown that he had an enforceable plea agreement
16       of six years in 2008, and he later withdrew his claim to enforce that purported
         agreement.  Wilson was provided with new counsel and entered a new plea.  He
17       has not shown that but for any error or omission of his first counsel, he would
         have achieved a better result.

18

19  (Lodgment No. 8, In re Wilson, No. D058562, Order at 1.)  The appellate court's adjudication

20  is not an objectively unreasonable application of clearly established federal law for the following

21  reasons.

22       **3.     Clearly Established Federal Law**

23       For ineffective assistance of counsel to provide a basis for habeas relief, Petitioner must

24  demonstrate two things.  First, he must show that counsel's performance was deficient.

25  Strickland v. Washington, 466 U.S. 668, 687 (1984).  "This requires showing that counsel made

26  errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by

27  the Sixth Amendment."  Id.  Second, he must show counsel's deficient performance prejudiced

28  the defense.  Id.  This requires showing that counsel's errors were so serious they deprived

Petitioner "of a fair trial, a trial whose result is reliable." Id.  To satisfy the prejudice prong, Petitioner need only demonstrate a reasonable probability that the result of the proceeding would have been different absent the error.  Williams, 529 U.S. at 406; Strickland, 466 U.S. at 694. A reasonable probability in this context is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.  Petitioner must establish both deficient performance and prejudice in order to establish ineffective assistance of counsel.  Id. at 687.

"Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. __, 130 S.Ct. 1473, 1485 (2010).  In the context of federal habeas review, "[t]he standards created by Strickland and section 2254(d) are both 'highly deferential.'" Harrington, 131 S.Ct. at 788.  A Strickland claim "should be analyzed under the 'unreasonable application' prong of section 2254(d)." Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

The United States Supreme Court has held that a defendant is entitled to the effective assistance of counsel when entering a guilty plea. Hill v. Lockhart, 474 U.S. 52, 56-57 (1985) (holding that the two-part Strickland test "applies to challenges to guilty pleas based on ineffective assistance of counsel."); see also McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970) ("Since Gideon v. Wainwright, 372 U.S. 335 (1963), it has been clear that a defendant pleading guilty to a felony charge has a federal right to the assistance of counsel.") The Supreme Court has, however, limited attacks on a conviction entered as a result of a guilty plea to challenges to the voluntary and intelligent nature of the plea:

> We thus reaffirm the principles recognized in the Brady trilogy [Brady v. United States, 397 U.S. 742 (1970); McMann v. Richardson, 397 U.S. 759 (1970) and Parker v. North Carolina, 397 U.S. 790 (1970)]: a guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.

Tollett, 411 U.S. at 267; see also McMann, 397 U.S. at 771 (holding that if a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases.")

**4. Analysis**

Petitioner has not challenged the voluntary and intelligent nature of the negotiated plea under which he was convicted and sentenced. Rather, the record contains the change of plea form, which Petitioner signed and initialed, indicating he understood and waived his constitutional trial rights, admitted he was guilty of the charges, and admitted that the prior conviction allegations were true. (Lodgment No. 30-35.) In a state court motion to enforce the original six-year plea offer, Petitioner alleged that he received ineffective assistance of counsel because his original counsel failed to communicate his acceptance of the six-year deal, and that the prosecutor committed misconduct by reneging on the six-year plea deal. (Lodgment No. 4 at 2-3, 6.) That motion was withdrawn, however, when Petitioner entered the negotiated guilty plea, and Petitioner fails to allege that he was not fully informed regarding his chances of success on his motion to enforce the original plea agreement. (Lodgment No. 1 at 34.) Thus, Petitioner is presenting only a challenge to events which preceded his negotiated guilty plea, and is not contending that the negotiated plea itself was not voluntarily and intelligently entered. Accordingly, the clearly established federal law identified above, in particular <u>Tollett</u> and <u>McMann</u>, does not appear to provide a basis for federal habeas relief.

Respondent correctly points out that the Supreme Court has recognized at least two exceptions to the <u>Tollett</u> rule, in <u>Menna v. New York</u>, 423 U.S 61 (1975) (double jeopardy), and <u>Blackledge v. Perry</u>, 417 U.S. 21 (1974) (retaliatory prosecution). (Ans. at 5.) It is clear, however, that neither exception applies here, and that the reasoning used by the Court to recognize those exceptions does not provide a basis for recognizing an exception here.

The Court in <u>Blackledge</u> found a fundamental distinction between a retaliatory prosecution claim and the <u>Tollett</u> case, stating that <u>Tollett</u> did not involve "the very power of the State to bring the defendant into court to answer the charge brought against him." <u>Blackledge</u>, 417 U.S. at 30 ("Unlike the defendant in <u>Tollett</u>, [petitioner] is not complaining of 'antecedent constitutional violations" or a "deprivation of constitutional rights that occurred prior to the entry of the guilty plea,' . . . Rather, the right that he asserts and that we today accept is the right not to be hailed into court at all.") Such a distinction does not exist here.

The Court in <u>Menna</u> also distinguished <u>Tollett</u> and the <u>Brady</u> trilogy upon which it relied, as well as <u>McMann</u>, observing that "[t]he point of these cases is that a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case." <u>Menna.</u> 423 U.S. at 63 n.2 (italics in original). The claim at issue in <u>Menna</u>, double jeopardy, was not waived by a guilty plea because, if established, "the State may not convict petitioner no matter how validly his factual guilt is established." <u>Id.</u> Even assuming Petitioner's factual guilt is not at issue here, Petitioner's claim, whether he should be provided the benefit of the original plea offer, does not implicate the State's ability to convict him. In addition to thus being distinguishable from <u>Blackledge</u> and <u>Menna</u>, this case does not present an exception to the <u>Tollett</u> rule for the following reasons.

At the time Petitioner entered the negotiated plea, a motion to enforce the six-year deal was pending in the trial court. (Lodgment No. 4.) In that motion, Petitioner alleged that he had been offered the deal for six years and had agreed to accept it, and the court would have accepted it, but was prevented from doing so by ineffective assistance of counsel and prosecutorial misconduct. (<u>Id.</u> at 2-3, 6.) The motion to enforce the six-year deal was withdrawn as part of the negotiated plea agreement. (Lodgment No. 1 at 34.) Petitioner was thus in the process of pressing the constitutional claim raised here when he voluntarily abandoned that process and entered the negotiated guilty plea, thereby preventing the trial court from fully developing the record and limiting the scope of this Court's review of his claim. An exception to <u>Tollett</u> should not be recognized where Petitioner's subsequent plea negotiated away his claim that he was deprived of a more favorable plea deal. <u>Tollett</u>, 411 U.S. at 267; <u>see also</u> <u>Puckett v. United States</u>, 556 U.S. 129, ___, 129 S.Ct. 1423, 1431 (2009) (holding that the rule requiring a defendant to impose an objection when entering a guilty plea in order to avoid waiver of the claim "means the defendant cannot 'game' the system, 'wait(ing) to see if the sentence later str(ikes) him as satisfactory, . . . and then seeking a second bite of the apple by raising the claim.'"), quoting <u>United States v. Vonn</u>, 535 U.S. 55, 73 (2002); <u>Menna</u>, 423 U.S. at 63 n.2 ("A guilty plea, therefore, simply renders irrelevant those constitutional violations . . . which do not stand in the way of conviction, if validly established.").

1        The Ninth Circuit has held, outside the context of AEDPA, that a defendant can establish

2   constitutionally ineffective assistance where counsel failed to communicate the existence of a

3   plea offer.  See United States v. Blaylock, 20 F.3d 1458, 1465-66 (9th Cir. 1994) (holding that

4   counsel's failure to communicate a plea offer to his client constituted unreasonable conduct

5   under prevailing professional standards, and was therefore deficient), citing Strickland, 466 U.S.

6   at 688 (stating that professional standards may provide guidance in determining whether

7   counsel's performance was deficient.)  In order to establish prejudice under that authority,

8   Petitioner would need to show that had his counsel communicated his willingness to accept the

9   original plea offer of six years, he would have been sentenced under that offer.  Blaylock, 20

10  F.3d at 1466-67.  Petitioner has made such allegations here and in the state court, but, as

11  discussed below, he abandoned his efforts to develop the record in state court to prove those

12  allegations when he withdrew his motion to enforce the original six-year deal.  As a result, the

13  record does not contain evidence regarding the likelihood of Petitioner being sentenced pursuant

14  to the six-year deal.  Also, although Ninth Circuit case law may be persuasive authority for

15  determining what constitutes "clearly established federal law" in the AEDPA context, see

16  Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000), only the holdings of the Supreme

17  Court at the time of the relevant state court decision constitute such clearly established federal

18  law.  Williams, 529 U.S. at 412.  Moreover, the issue of what remedy would be available

19  remains contentious.  See e.g. Blaylock, 20 F.3d at 1468-69 ("The government may of course,

20  in proper cases, seek to demonstrate that intervening circumstances have so changed the factual

21  premises of its original offer that, with just cause, it would have modified or withdrawn its offer

22  prior to its expiration date."); see also People v. Rhoden, 75 Cal.App.4th 1346, 1353-55 (2001)

23  (noting that California law permits a prosecutor to withdraw a plea offer anytime prior to entry

24  of the plea provided there is no detrimental reliance by the defendant).

25       In Frye v. State, 311 S.W.3d 350, 354 (Mo.App.W.D. 2010), cert. granted by Missouri

26  v. Frye, 131 S.Ct. 856 (Jan. 7, 2011), the defendant alleged that he was not told of an initial plea

27  offer which would have permitted him to plead guilty to a misdemeanor charge, and his

28  subsequent unconditional guilty plea to a felony charge was therefore the result of ineffective

assistance of counsel.  <u>Frye</u>, 311 S.W.3d at 351.  The <u>Frye</u> Court found deficient performance and prejudice under <u>Strickland</u> and <u>Hill</u>, but also found that it was not empowered to force the state to extend the expired offer to plea to a misdemeanor.  <u>Id.</u> at 360-61.  Because the petitioner in <u>Frye</u> was not informed of the plea offer until after he had entered his unconditional guilty plea and was serving his sentence, he was not fully informed when he entered his unconditional plea, and therefore fell within the <u>Tollett</u> involuntary plea exception and did not waive his ineffective assistance claim.  <u>Frye</u>, 311 S.W.3d at 355; <u>see</u> <u>Tollett</u>, 411 U.S. at 266-67 (holding that if a defendant pleads guilty "[h]e may only attack the voluntary and intelligent character of the guilty plea by showing the advice he received from counsel was not within the standards set forth in <u>McMann</u>.").  The United States Supreme Court has granted certiorari to review the holding in <u>Frye</u>, and has indicated that it would also address the issue: "What remedy, if any, should be provided for ineffective assistance of counsel during plea bargain negotiations if the defendant was later convicted and sentenced pursuant to constitutionally adequate procedures?"  <u>Missouri v. Frye</u>, 131 S.Ct. 856; <u>see also</u> <u>Lafler v. Cooper</u>, 131 S.Ct. 856 (Jan. 7, 2011) (granting certiorari on the same question in a case where defense counsel was found to be deficient in advising defendant to reject a plea offer).

The precise issue presented by Petitioner is slightly different than in <u>Frye</u>.  Here, Petitioner was in the process of attempting to withdraw his unconditional guilty plea and enforce the six-year offer when he entered a negotiated guilty plea.  He does not allege that he was not fully informed of his chances for success on his motion to enforce the six-year deal when he entered the negotiated plea.  The Supreme Court in <u>Frye</u> and <u>Lafler</u>, in addressing the question regarding what remedy might be available for the denial of effective assistance of counsel in the plea bargain stage, might create a future avenue for relief to Petitioner, particularly with respect to the new allegations raised in the Traverse that he rejected the original offer due to counsel's erroneous advice.  Even were the Court to consider those allegations, however, or if the Supreme Court creates an avenue for Petitioner's original claim, the most likely remedy would be to give Petitioner exactly what he has already received and negotiated away, an opportunity to have new counsel appointed for the purposes of attempting to enforce the original six-year plea.  <u>See</u> <u>Riggs</u>

1    v. Fairman, 399 F.3d 1179, 1184-85 (9th Cir. 2005).  Nevertheless, because the claim Petitioner

2    raises in the Petition (and in the Traverse) has never been directly addressed by the United States

3    Supreme Court, there does not currently appear to be any "clearly established federal law"

4    within the meaning of 28 U.S.C. § 2254(d) applicable to his claim.  See Wright v. Van Patten,

5    552 U.S. 120, 125 (2008) (holding that a state court adjudication is not contrary to or an

6    unreasonable application of clearly established federal law where no Supreme Court decision

7    "squarely addresses the issue" or gives a "clear answer to the question presented."); Carey v.

8    Musladin, 549 U.S. 70, 73-76 (2006) (holding that because the Supreme Court had never

9    addressed the effect of the particular conduct at issue on a defendant's fair trial rights, it was "an

10   open question in our jurisprudence" and there was no clearly established federal law on the

11   issue).  Accordingly, the denial of Petitioner's claim by the state appellate court did not involve

12   an objectively unreasonable application of any clearly established federal law.

13          Assuming, *arguendo*, that Strickland articulates the "clearly established federal law"

14   applicable to Petitioner's claim, and Tollett does not apply, the appellate court's application of

15   that law was not objectively unreasonable.  See e.g. Williams, 529 U.S. at 407 (holding that a

16   state court decision may involve an "unreasonable application" of clearly established federal

17   law, "if the state court either unreasonably extends a legal principle from [Supreme Court]

18   precedent to a new context where it should not apply or unreasonably refuses to extend that

19   principle to a new context where it should apply.")  Petitioner is required to demonstrate that the

20   state court's determination that he was not prejudiced under Strickland was objectively

21   unreasonable.  As the state appellate court noted, Petitioner had failed to establish in the state

22   court that he would have been sentenced under the six-year plea offer had his counsel

23   communicated his willingness to accept the offer, and had abandoned any effort to enforce such

24   an agreement when entering the negotiated plea.  Petitioner is not entitled to an evidentiary

25   hearing in this Court in order to attempt to establish whether there existed an enforceable six-

26   year agreement, or whether there is a reasonable probability that the court would have sentenced

27   him under that deal, because he abandoned his effort to develop the state court record when he

28   withdrew his motion to enforce the six-year plea offer and entered the negotiated plea

1   agreement.  See Baja v. Ducharme, 187 F.3d 1075, 1079 (9th Cir. 1999) (holding that petitioner

2   had failed to develop a factual basis for his claim in state proceedings because he had the

3   opportunity to come forward with affidavits and other evidence in support of his ineffective

4   assistance claim but failed to do so); see also Williams v. Taylor, 529 U.S. 420, 435 (2000)

5   (finding that diligence in developing the record in state court "depends upon whether the

6   prisoner made a reasonable attempt, in light of the information available at the time, to

7   investigate and pursue claims in state court.")

8           As a result, evidentiary development of the record in this Court is subject to the

9   requirements of 28 U.S.C. § 2254(e)(2), which provides that where a federal habeas petitioner

10  has failed to develop the factual basis for his claim in the state court, this Court shall not hold

11  an evidentiary hearing unless Petitioner shows that the claim: (1) rests on a new rule of

12  constitutional law made retroactive to cases on collateral review by the Supreme Court, or (2) is

13  based on a factual predicate that could not have been previously discovered through the exercise

14  of due diligence and the facts underlying the claim would be sufficient to establish by clear and

15  convincing evidence that but for the constitutional error no reasonable factfinder would have

16  found Petitioner guilty of the underlying offense.  Bragg v. Galaza, 242 F.3d 1082, 1089-90 (9th

17  Cir. 2001); 28 U.S.C. § 2254(e)(2).  Because Petitioner cannot satisfy either of these provisions,

18  the Court recommends denying the request for an evidentiary hearing presented in his Traverse.

19  (Traverse at 2-3.)

20          Even assuming Petitioner diligently attempted to establish the facts supporting his claim

21  in the state court, or could satisfy one of the exceptions to 28 U.S.C. § 2254(e)(2), such facts

22  were never actually presented to the state court due to Petitioner's abandonment of his motion

23  to enforce the six-year plea offer.  The state courts, therefore, did not have facts before them

24  demonstrating that the Strickland prejudice standard had been satisfied.  This Court's review of

25  a state court adjudication under 28 U.S.C. § 2254(d)(1) "is limited to the record that was before

26  the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. ___, 131

27  S.Ct. 1388, 1398 (2011).  As such, the state appellate court's rejection of the claim on the basis

28  that "[Petitioner] has not shown that but for any error or omission of his first counsel, he would

1   have achieved a better result," did not involve an unreasonable application of <u>Strickland</u>.  <u>See</u>

2   <u>Strickland</u>, 466 U.S. at 694 (holding that prejudice requires showing a reasonable probability

3   that the outcome would be different); <u>Harrington</u>, 131 S.Ct. at 786-87 (holding that to establish

4   an unreasonable application of clearly established federal law "a state prisoner must show that

5   the state court's ruling on the claim being presented in federal court was so lacking in

6   justification that there was an error well understood and comprehended in existing law beyond

7   any possibility for fairminded disagreement.")

8          Finally, assuming that the Deputy District Attorney's declaration stating that she would

9   have made a notation in the file if the offer had remained open established that a six-year offer

10  was in fact available at Petitioner's first court date, and further assuming that Petitioner could

11  satisfy the provisions of 28 U.S.C. § 2254(d) without the necessity of expanding the record, he

12  is still not entitled to habeas relief.  Satisfying the conditions of 28 U.S.C. § 2254(d) is merely

13  a condition of obtaining federal habeas relief, but does not provide a basis for granting relief.

14  <u>Fry v. Pliler</u>, 551 U.S. 112, 119 (2007) (holding that section 2254(d) "sets forth a precondition

15  to the grant of habeas relief . . ., not an entitlement to it.")  Rather, Petitioner must still must

16  establish that the alleged constitutional error provides a basis for federal habeas relief.  As set

17  forth above, in light of the fact that Petitioner abandoned his claim by entering the negotiated

18  plea before the trial court had an opportunity to fully develop the record, Petitioner has waived

19  his claim for ineffective assistance of counsel based on events which preceded the entry of his

20  negotiated guilty plea.  <u>Tollett</u>, 411 U.S. at 266-67; <u>Puckett</u>, 129 S.Ct. at 1431; <u>Menna.</u> 423 U.S.

21  at 63 n.2.  As discussed above, there is no basis to find an exception to that rule in Petitioner's

22  case.  The survey of relevant case law presented above supports that conclusion even if AEDPA

23  deference did not apply and the Court were to address the claim under a *de novo* standard of

24  review.  <u>See</u> <u>Hayes v. Brown</u>, 399 F.3d 972, 978 (9th Cir. 2005) (en banc) (noting that pre-

25  AEDPA habeas review provides that "state court judgments of conviction and sentence carry a

26  presumption of finality and legality and may be set aside only when a state prisoner carries his

27  burden of proving that [his] detention violates the fundamental liberties of the person,

28  safeguarded against state action by the Federal Constitution.").

1    Even if the Supreme Court determines as a matter of first impression in <u>Frye</u> or <u>Lafler</u> that

2    a claim such as Petitioner presents here can survive <u>Tollett</u>, or that there is a remedy available

3    for this type of alleged ineffective assistance, such a new rule would be unlikely to apply to

4    collateral attacks such as the one Petitioner presents here.  Under <u>Teague v. Lane</u>, 489 U.S. 288

5    (1989), habeas relief is generally unavailable if it is based on a new rule announced after a

6    petitioner's conviction and sentence became final.  <u>Id.</u> at 310; <u>Caspari v. Bohlen</u>, 510 U.S. 383,

7    389 (1994).  There are two exceptions to non-retroactivity: (1) "rules forbidding punishment of

8    certain primary conduct or . . . rules prohibiting a certain category of punishment for a class of

9    defendants because of their status or offense; and (2) "watershed rules of criminal procedure

10   implicating the fundamental fairness and accuracy of the criminal proceeding." <u>Beard v. Banks</u>,

11   542 U.S. 406, 416-17 (2004).  It does not appear that either of these exceptions would apply to

12   Petitioner's claim.

13       In sum, Petitioner has not satisfied the provisions of 28 U.S.C. § 2254(d), and is therefore

14   not entitled to federal habeas relief, because the state court adjudication of his claim did not

15   involve an unreasonable application of clearly established federal law.  Even assuming Petitioner

16   could make such a showing, he has waived any claim alleging ineffective assistance of counsel

17   based on events arising before he entered the negotiated guilty plea, and has likely already

18   received any relief to which he might be entitled.  Furthermore, an evidentiary hearing is nether

19   necessary for the resolution of Petitioner's claims nor permitted.  The Court recommends

20   Petitioner's request to present a new claim in the Traverse be **DENIED**, the request for an

21   evidentiary hearing be **DENIED**, and the Petition be **DENIED**.

22                          **VI.**

23             **CONCLUSION AND RECOMMENDATION**

24       For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court

25   issue an Order: (1) approving and adopting this Amended Report and Recommendation, and (2)

26   directing that Judgment be entered denying the Petition.

27   ///

28

1        **IT IS ORDERED** that no later than __**November 14, 2011**__, any party to this action may

2    file written objections with the Court and serve a copy on all parties.  The document should be

3    captioned "Objections to Report and Recommendation."

4        **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the

5    Court and served on all parties no later than __**December 5, 2011.**__  The parties are advised that

6    failure to file objections with the specified time may waive the right to raise those objections on

7    appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez

8    v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

9

10   DATED:  October 24, 2011

11

12                                            BARBARA L. MAJOR
                                              United States Magistrate Judge

13

14   CC:          ALL PARTIES

15

16

17

18

19

20

21

22

23

24

25

26

27

28